IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-00017-MR-WCM

| | | |
|---|---|---|
| ANGELA RIDDLE, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I.    Procedural Background

In January of 2021, Angela Riddle ("Plaintiff") filed applications for disability insurance benefits and supplemental security income. Transcript of the Administrative Record ("AR") 248-254, AR 255-263. Plaintiff alleges disability beginning January 1, 2020. AR 248, AR 255.

On November 27, 2023, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 14-46. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of osteoarthritis of the bilateral knees, degenerative disc disease of the cervical spine status post fusion, lumbar degenerative disc disease and obesity. AR 20. After determining that Plaintiff's impairments did not meet or medically equal any of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform sedentary work… except that she can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, and crouch, but can never crawl. She can occasionally use foot controls with her bilateral lower extremities. The claimant must avoid concentrated exposure to hazards and is limited to simple, unskilled work.

AR 27.

Applying this RFC, the ALJ found that Plaintiff was not disabled. AR 39-40.

## III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ failed to demonstrate that Plaintiff could perform other jobs that existed in significant numbers in the national economy.

Additionally, Plaintiff asserts that the ALJ failed to consider her absenteeism from work stemming from medical treatment.

2

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505(a); 416.905(a). The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a); 416.920(a). The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179-80 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff

3

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Jobs Relied Upon by the ALJ

The ALJ found that an individual of Plaintiff's age, with the same education, work experience, and RFC, would be able to perform the jobs of document preparer, telephone quotation clerk, and addresser.

#### 1. Reasoning Level of Three

The Reasoning Development scale of the Dictionary of Occupational Title ("DOT") has six levels—Level 1 requires the least reasoning ability, and Level 6 requires the most. See DOT, App'x C, 1991 WL 688702. A "reasoning level of three" requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Id.

Here, Plaintiff argues that the jobs of document preparer and telephone quotation clerk, both of which require a reasoning level of "3," are inconsistent with her limitation to "simple, unskilled work." See DICOT 249.587-018 (G.P.O.), 1991 WL 672349 (document preparer, microfilming); DICOT 237.367-046 (G.P.O.), 1991 WL 67219 (telephone quotation clerk).

In the past, courts in this district "have disagreed whether a restriction to simple, routine, and repetitive work conflicts with jobs that require level three reasoning," Leigh v. Saul, No. 1:19-cv-00142-FDW, 2020 WL 3578312, at *5 (W.D.N.C. July 1, 2020) (comparing Corvin v. Berryhill, No. 5:17-CV-92-RJC-DSC, 2018 WL 3738226, at *5 (W.D.N.C. Aug. 7, 2018) (agreeing with the plaintiff's objection that an apparent conflict exists between a level three reasoning ability and the ALJ's limitation to "simple, routine, repetitive task[s]") with Thacker v. Astrue, 3:11-CV-246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) ("There was no apparent conflict between the ALJ's RFC limitation to simple, routine, repetitive, unskilled work and the reasoning level three jobs identified by the V.E."), adopted by 2012 WL 380052 (W.D.N.C. Feb. 6, 2012)); see also Phillips v. Comm'r of Soc. Sec. Admin., No. 1:20-CV-00335-MR-WCM, 2021 WL 8053729, at *3 (W.D.N.C. Nov. 23, 2021) ("Some courts in this district have held that a limitation to simple, routine, repetitive tasks does not conflict with a DOT reasoning level of either 2 or 3") (citations omitted), report and recommendation adopted sub nom., Phillips v. Kijakazi, No. 1:20-CV-00335-MR-WCM, 2022 WL 821429 (W.D.N.C. Mar. 17, 2022).[1]

---

[1] The undersigned has found that "[a] limitation to 'simple instructions' presents an apparent conflict with jobs requiring a reasoning level of 3." Baxley v. Comm'r of Soc. Sec. Admin., No. 3:22-CV-00654-WCM, 2024 WL 69963, at *3 (W.D.N.C. Jan. 4, 2024) (citing Keller v. Berryhill, 754 Fed. Appx. 193 (4th Cir. 2018) (per curiam) ("We

However, it is not necessary to address this issue in this case because, as discussed below, the ALJ appropriately relied on the job of addresser.

### 2. Addresser

During the hearing, the vocational expert testified that the job of addresser had 2,000 positions nationally. AR 70. Plaintiff argues that a job with 2,000 positions nationwide is insufficient to meet the Commissioner's burden at step five.[2] In support of her position, Plaintiff cites an agency "emergency message" ("EM"), which Plaintiff contends indicates that "jobs with fewer than 1,000 employees in each of the nine U.S. Census Divisions (and thus with less than 9,000 employees nationally) are isolated occupations that do not exist in significant numbers and therefore cannot be relied upon…." Doc. 5 at 7.

The Fourth Circuit has not established a minimum requirement for the number of positions that must be available, but it has found that jobs existing in relatively small numbers are sufficient. See Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (stating that as few as 110 jobs in a region does

---

therefore conclude that an apparent conflict exists between a limitation to short and simple instructions and Reasoning Development Level 3 occupations.")); see also Beavers v. Saul, No. 1:18-CV-203-DSC, 2019 WL 2746941, at *2 (W.D.N.C. July 1, 2019) ("this Court is persuaded that Reasoning Level 3 conflicts with a limitation to simple, routine and repetitive tasks."); Carpenter v. Acting Comm'r of Soc. Sec., No. 5:23-CV-00037-KDB, 2023 WL 7726706, at *4 (W.D.N.C. Nov. 15, 2023).

[2] Plaintiff does not contend that there is an apparent conflict between the job of addresser (which requires a reasoning level of 2) and her RFC.

not constitute an insignificant number of jobs); see also Hodges v. Apfel, No. 99-2265, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (per curiam) ("Hodges asserts that he qualifies for no more than 153 jobs. That number suffices to defeat Hodges's claim for disability benefits."); Brittain v. Sullivan, No. 91-1132, 1992 WL 44817, at *4 (4th Cir. Mar. 11, 1992) (per curiam) ("As noted in Hicks v. Califano ... 110 jobs in the marketplace is a sufficient number of jobs under the statute to be deemed 'substantial' ....").

Courts in this district have similarly found an ALJ's reliance on jobs existing in relatively modest numbers to be sufficient. See Williams v. Kijakazi, No. 5:21-cv-6-MOC, 2022 WL 821374, at *8 (W.D.N.C. Mar. 17, 2022) (4,000 jobs in the national economy deemed sufficient); Cogar v. Colvin, No. 3:13-CV-380-FDW, 2014 WL 1713795, at *7 (W.D.N.C. April 30, 2014) (finding "830 laundry folding jobs in North Carolina and 35,000 laundry folding jobs nationally account for 'significant numbers'"); see also Murray v. Kijakazi, No. 3:21-CV-489-MOC, 2022 WL 2252603, at *4 (W.D.N.C. June 22, 2022) (rejecting the argument that the job of addresser did not exist in sufficient numbers in the national economy).

Further, the guidance found in the EM is focused on "isolated" occupations that "exist only in very limited numbers in relatively few locations outside of the region where [the individual lives]." Doc. 5-1 at 1. Significantly,

7

the EM lists specific occupations the agency considers to be "isolated" but the job of addresser is not included. See id. at 3-10.

Therefore, the ALJ did not err in relying upon the job of addresser when finding Plaintiff was not disabled.

### B. Plaintiff's Absenteeism

In Dennis v. Kijakazi, No. 21-2078, 2023 WL 2945903, at *1, 6 (4th Cir. Apr. 14, 2023) (unpubl.), the Fourth Circuit explained that when confronted with a "history of frequent and extensive medical visits," an ALJ "must discuss the record evidence regarding the frequency of [the claimant's] need for medical treatment and how [the claimant's] absenteeism affects her ability to work." The Fourth Circuit remanded for further administrative proceedings where the "ALJ never discussed the evidence in the administrative record related to [the claimant's] absenteeism" despite medical records indicating that during the relevant period, the claimant had been hospitalized for 38 days, had attended multiple weekday medical appointments, and had submitted an opinion from her treating rheumatologist stating that her impairments would cause her to be absent more than twice a month. Id. at *5-6.

Accordingly, where the issue of a claimant's absenteeism is fairly presented by the claimant's medical record, courts have found that an ALJ's failure to discuss potential absences from work requires remand. See e.g., McIntosh v. Bisignano, No. 1:25-CV-00031-KDB, 2025 WL 2677544, at *4

(W.D.N.C. Sept. 18, 2025) ("Defendant likewise fails to articulate how the ALJ reconciled the VE's testimony—that [the claimant] could be absent up to once per month and still be employable—with evidence showing that [the claimant's] therapy appointments resulted in time away from work 1.1-1.6 times per week."); <u>Daisy H. v. O'Malley</u>, No. 3:22-CV-00688-DJN-SLS, 2024 WL 393273, at \*6 (E.D. Va. Jan. 12, 2024), <u>report and recommendation adopted sub nom.</u>, <u>Hill v. O'Malley</u>, No. 3:22-CV-688 (DJN), 2024 WL 388384 (E.D. Va. Jan. 31, 2024) ("the ALJ…should have addressed Plaintiff's absenteeism given the prominence of this issue"); <u>Clinton C. v. Kijakazi</u>, No. 1:22-CV-00489, 2023 WL 4167878, at \*12 (S.D.W. Va. May 10, 2023), <u>report and recommendation adopted</u>, No. CV 1:22-00489, 2023 WL 4162274 (S.D.W. Va. June 23, 2023) (finding the claimant's absenteeism should have been explained by the ALJ where the record "was not so devoid of evidence to overlook the issue of absenteeism entirely").

Conversely, when an ALJ has explained adequately his or her reasoning for not including an absenteeism limitation in the claimant's RFC, or otherwise has established that a claimant's medical records would not support an absenteeism limitation, remand is not required. <u>See</u> <u>Collins v. Bisignano</u>, No. 7:25-CV-368-RJ, 2025 WL 3471414, at \*7 (E.D.N.C. Dec. 3, 2025) (distinguishing claimant's case from <u>Dennis</u> because the ALJ thoroughly discussed the claimant's treatment history and determined that her symptoms

9

were well controlled and additionally found that a medical opinion stating that the claimant would be required to attend frequent treatment was unpersuasive); Joseph J. S. v. O'Malley, No. CV 1:23-4456-SVH, 2024 WL 3224764, at *13 (D.S.C. June 5, 2024) ("The ALJ found unpersuasive 'the portion of Dr. Steadham's opinion finding that the claimant would miss an occasional day of work due to his mental illness' as 'not supported by objective medical evidence.' Although Plaintiff had the option to attend medical and mental health visits with the frequency he cites, the record generally does not reflect such frequent participation …. Furthermore, it is not evident from the record that Plaintiff could not have scheduled some of these visits during break periods or non-working hours.").

Here, Plaintiff asserts that her treatment includes "frequent . . . visits to the Methadone clinic" and contends that during the "relevant time period," she "visited the Methadone clinic for Methadone dosages, counseling, psychiatric evaluations, and medical evaluations at least 149 times, about five times per month, often undergoing multiple different treatments on the same day." Doc. 5 at 10. Plaintiff contends that the ALJ did not consider her absenteeism from work stemming from this treatment regime, and that, in light of the vocational expert's testimony that an employer would tolerate a maximum of one absence per month for each of the jobs identified, remand is required. Doc. 5, see also AR 72.

Plaintiff did not raise the issue of absenteeism during the administrative hearing, and it appears that some of the appointments cited in Plaintiff's briefing occurred early in the morning or during the lunch hour and were of short duration. See e.g., AR 1021, 1483, 1877, 1733 (20-minute counseling sessions each ending before 8:30 AM); AR 1306, 1436, 1440, 1752, 2091, 2111, 2116, 2179 (methadone treatments occurring during the noon hour). Plaintiff also does not contest the Commissioner's assertion that Plaintiff worked while undergoing methadone treatment previously. Doc. 6 at 11 (citing AR 270, 275, 282, 308 (Plaintiff's yearly earnings in 2018, 2019, and 2020 and records reflecting Plaintiff's work as a CNA)).

Further, the ALJ did discuss Plaintiff's methadone treatment records, see AR 22 ("The claimant has received methadone from Crossroads Treatment Centers since approximately 2017, although she underwent an earlier evaluation for treatment in 2015."); AR 23-25 (discussing methadone clinic records), and noted that Plaintiff reported that "she gets up and goes to the methadone clinic every morning, runs errands with her husband, plays video games, and isolates in her room at times." AR 35; see also AR 417.

Finally, the ALJ considered the opinion of Plaintiff's family doctor, who stated that Plaintiff would "likely miss three or more days of work per month," but appeared to find that opinion to be unpersuasive. AR 33.

11

However, the administrative record contains extensive documentation of Plaintiff's frequent methadone treatments and associated counseling and other appointments, and while the ALJ did discuss that treatment, the ALJ did not consider explicitly whether the frequency of such treatment would cause Plaintiff to be absent from work to an unacceptable degree.

In short, the record might support the lack of an absenteeism restriction in Plaintiff's RFC, but that question is more appropriately considered by the ALJ in the first instance, and so remand will be recommended on this basis. See Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013) ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province—nor the province of the district court—to engage in these exercises in the first instance.") (quoting Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal citation omitted)).

## VI.   Recommendation

The undersigned therefore **RESPECTFULLY RECOMMENDS** that the Commissioner's decision be **VACATED,** and that this matter be **REMANDED** for further administrative proceedings.

Signed: February 26, 2026

W. Carleton Metcalf
United States Magistrate Judge

13

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).

14